FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 01, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACY B., | No. 1:18-CV-03102-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 17. Attorney D. James Tree represents Tracy B. (Plaintiff); Special Assistant United States Attorney Michael Sinclair Howard represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

On December 26, 2013, Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Tr. 24, 226-32. On May 20, 2014, Plaintiff filed an application for Supplemental Security Income benefits. Tr. 24,

234-39.  Plaintiff alleged a disability onset date of December 2, 2013, Tr. 24, 55, 226, 234, due to Bipolar Disorder, Drug and Alcohol Abuse, Post Traumatic Stress Disorder (PTSD), Type 2 Diabetes, Anxiety, Trouble Sleeping, Right Ankle Pain, and Right Shoulder Pain.  Tr. 89, 256.  Plaintiff's application for Disability Insurance Benefits was denied initially, and both of Plaintiff's claims were denied upon reconsideration.

Administrative Law Judge (ALJ) Ilene Sloan held a hearing on June 29, 2016, Tr. 52-87, and issued an unfavorable decision on October 5, 2016.  Tr. 24-45.  The Appeals Council denied review on April 20, 2018.  Tr. 1-6.  The ALJ's October 5, 2016, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 18, 2018.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on April 17, 1970 and was 43 years old on the alleged disability onset date, December 2, 2013.  Tr. 43, 226, 234.  Plaintiff has a high school education.  Tr. 93.  She testified that she was in special education classes from elementary school to high school.  Tr. 63-64.

At the time of the administrative hearing, she worked 34 hours a month for the Department of Social and Health Services (DSHS) as a caretaker for her mother.  Tr. 58.  She testified that she would not be able to work more than the DSHS authorized amount of 34 hours a month due to pain in her right ankle and right shoulder.  Tr. 58.  Plaintiff testified that she does the dishes, vacuums, and sweeps for her mother as part of her caretaking duties.  Tr. 58.  She reported previously working as a cashier, a utility worker in a casino, and a fruit sorter in a fruit warehouse.  Tr. 257.  She last worked as a forklift operator in a fruit

processing warehouse for over two years, and she quit that job after getting upset that they changed her schedule.[1]  Tr. 61-62, 132.  Plaintiff testified that she tried to find a job approximately one year before the administrative hearing, but she was unsuccessful in obtaining employment.  Tr. 62.

Plaintiff testified that she has pain in her right ankle, right shoulder, and back.  Tr. 59, 67-68, 72.  She has had issues with her ankle since 1999, and her ankle pain became worse during the three years prior to the administrative hearing.  Tr. 67-68.  Plaintiff testified she can only put weight on her right ankle for about 30 minutes before she starts limping due to it being "bone on bone."  Tr. 58.  She testified that she has had issues with her right shoulder since 2010, and her shoulder pain became worse while she was working at her last job.  Tr. 68.  She testified that she is unable to lift anything heavy due to her shoulder pain, as her right shoulder feels like it is going to pop out and there is a lot of pull in her muscle.  Tr. 69.  Plaintiff testified that she also has back pain, so she has to sit down and rest for a little while when she is doing chores in her role as caretaker for her mother.  Tr. 59.  She testified that the anti-inflammatory medications that she is taking do not really help.  Tr. 68.

Plaintiff testified that she has bipolar disorder and depression.  Tr. 60.  She testified that she was extremely uncomfortable at the administrative hearing because there were five people in the room and that was too many people.  Tr. 60.  She testified that she is very uncomfortable around people, she does not go anywhere, and although she has a phone, she only uses it for her doctor's appointments.  Tr. 60.  She was told that she had become completely isolated during the months leading up to the administrative hearing.  Tr. 60-61, 64.  She testified that she does not sleep at night due to her PTSD and voices in her head.

_____

[1] There is also evidence in the record that Plaintiff was laid off from her job as a forklift driver.  Tr. 132.

Tr. 71.  She testified that she goes to therapy once every other month and she is on medication for bipolar disorder and PTSD, but neither counseling nor the medications are really helping with her mental health symptoms.  Tr. 60-61, 64, 70-72.

Plaintiff testified that she lives with her mother in a two-bedroom apartment.  Tr. 58, 62.  She vacuums, does the dishes, sweeps, mops the kitchen floor, cleans the bathroom, and does her own laundry.  Tr. 62.  Plaintiff cooks "[e]very now and then."  Tr. 62.  Plaintiff goes grocery shopping with her mother so she can carry the bags for her and put them in the car.  Tr. 63.  Plaintiff does not drive, so she gets rides from her mother or another friend, or she takes the bus.  Tr. 63.  Plaintiff testified that she likes to color, listen to music, and watch television.  Tr. 64.  She has one friend that she occasionally visits and sometimes she goes out to eat.  Tr. 64, 67.  Plaintiff testified that she planted flowers in her garden the same year as the administrative hearing.  Tr. 79.  She testified that she loves to go fishing, but her ankle pain prevents her from fishing because it is too far to walk to the ponds.  Tr. 66-67.  She testified that she had not been fishing in over a year prior to the administrative hearing, and when she was going fishing, she would go approximately two or three times a month.  Tr. 67, 78.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, he [or she] will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On October 5, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, December 2, 2013.  Tr. 26.

At step two, the ALJ determined Plaintiff had the following severe impairments: right shoulder impingement syndrome with labral tear, status post open reduction internal fixation of the right ankle with post-traumatic arthritis of the tibiotalar joint, diabetes mellitus, sleep apnea, mild degenerative disc disease, obesity, depression with a history of major depressive episodes, manic depressive disorder, adjustment disorder with anxiety and depressed mood, and a history of alcohol dependency.  Tr. 26.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 27.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined that she could perform light exertion level work with the following limitations: she can stand and walk for two hours out of eight hours; sit for six hours out of eight hours; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl; she can occasionally reach overhead with the non-dominant right upper extremity and can frequently reach with this extremity in all other directions; she would need to avoid concentrated exposure to vibration and even moderate exposure to hazards such as moving machinery and unprotected heights; she is able to understand, remember, and carry out simple, routine, and repetitive tasks; she is able to have occasional and superficial contact with the general public, co-workers, and supervisors; and she is able to work in a predictable workplace environment. Tr. 29-30.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work.  Tr. 43.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert (VE), Plaintiff could perform other jobs present in significant numbers in the national economy, including the light exertion level jobs of office helper, assembler, and bench assembler. Tr. 44-45. The ALJ thus concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act from December 2, 2013, through the date of the ALJ's decision, October 5, 2016. Tr. 45.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly finding that Plaintiff's bipolar disorder, PTSD, and borderline personality disorder were not severe at step two; (2) improperly discrediting Plaintiff's symptom claims; and (3) failing to properly consider and weigh the opinion evidence. ECF No. 14 at 2. Additionally, Plaintiff argues that a remand for an immediate award of benefits is warranted. ECF No. 14 at 21.

## DISCUSSION[2]

---

[2] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

**A.    Step Two**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation process by failing to identify her bipolar disorder, PTSD, and borderline personality disorder as severe impairments.  ECF No. 14 at 5-8.

Plaintiff has the burden of proving she has a severe impairment at step two of the sequential evaluation process.  20 C.F.R. §§ 404.1512, 416.912.  In order to meet this burden, Plaintiff must furnish medical and other evidence to show her impairment is severe.  20 C.F.R. §§ 404.1512(a), 416.912(a).  The regulations provide that an impairment is severe if it significantly limits a claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" are defined as the abilities and aptitudes necessary to do most jobs.  20 C.F.R. §§ 404.1522(b), 416.922(b).

Step two is "a *de minimis* screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence."  SSR 85-28; *see Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a severe impairment.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

Here, the ALJ determined Plaintiff had the severe impairments of right shoulder impingement syndrome with labral tear, status post open reduction internal fixation of the right ankle with post-traumatic arthritis of the tibiotalar joint, diabetes mellitus, sleep apnea, mild degenerative disc disease, obesity,

depression with a history of major depressive episodes, manic depressive disorder, adjustment disorder with anxiety and depressed mood, and a history of alcohol dependency. Tr. 26. The ALJ was silent as to the specific term "bipolar disorder," and Plaintiff argues that the ALJ erred by rejecting bipolar disorder as a severe impairment without any justification. ECF No. 14 at 6 (citing Tr. 26-27). However, the ALJ's step two finding specifically included the severe impairment of "manic depressive disorder," Tr. 26, which is another term for bipolar disorder. *See* Nat. Inst. of Health, *Bipolar Disorder*, *available at* https://www.nimh.nih.gov/health/topics/bipolar-disorder/index.shtml. Thus, Plaintiff does not show any error on this issue.

The ALJ concluded that Plaintiff's PTSD and borderline personality disorder were non-severe impairments. Tr. 27. Specifically, the ALJ noted that although the medical evidence of record showed diagnoses of PTSD and borderline personality disorder four months before the administrative hearing in February 2016, no other treating or examining medical source had formally diagnosed these conditions and such recent diagnoses failed to meet the 12-month durational requirement for purposes of establishing a severe impairment. Tr. 27 (citing Tr. 891). Plaintiff accurately notes that a condition which is expected to last for a continuous period of at least 12 months meets the duration requirement. ECF No. 14 at 6 (citing 20 C.F.R. § 404.1509). Dr. Cline's opinion met the durational requirement by noting that Plaintiff's PTSD and borderline personality disorder would last with available treatment for nine to 12 months. Tr. 891-92. Thus, the ALJ erred in failing to consider whether Plaintiff's PTSD and borderline personality disorder were severe impairments.

The Court finds that the ALJ's error is harmless. "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). An error is harmless where it is nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. *Stout v. Comm'r*

*of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the error is harmless because step two was resolved in Plaintiff's favor, and Plaintiff fails to identify any limitation associated with these impairments that were not incorporated into the RFC. *See Stout*, 454 F.3d at 1055; *Burch*, 400 F.3d at 682. Despite rejecting PTSD and borderline personality disorder as severe impairments at step two, the ALJ specifically stated that she had "considered all of [Plaintiff's] established symptoms and resulting functional limitations – regardless of the diagnostic label attached to them – in assessing the maximum residual functional capacity." Tr. 27. The ALJ further stated that she considered the totality of Plaintiff's mental symptoms and determined that "[a]dding more 'severe' mental impairments would not alter her residual functional capacity." Tr. 27. Plaintiff makes no showing that PTSD or borderline personality disorder create credited limitations not already accounted for in the RFC. *See Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (the party challenging the ALJ's decision bears the burden of showing harm). Thus, Plaintiff is not entitled to remand on these grounds.

**B.    Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ erred by improperly discrediting her symptom complaints. ECF No. 14 at 15-21. It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. In considering Plaintiff's symptoms, the ALJ must follow a two-step analysis. *Lingerfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether there is objective evidence of an underlying impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. *Id*. at 1036 (quotation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*; citing *Smolen*, 80 F.3d at 1281. "General findings are insufficient: rather, the

ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 31. The ALJ recounted the following reasons for discrediting Plaintiff's symptom testimony: (1) inconsistencies with the objective medical evidence; (2) inconsistent statements; (3) inconsistencies with Plaintiff's activities of daily living; and (4) treatment was effective in controlling symptoms. The ALJ provided specific examples of each. Tr. 30-33.

### 1.     Inconsistencies with Objective Medical Evidence

First, the ALJ noted that the objective medical evidence undermined Plaintiff's allegations regarding the severity of her physical and mental symptoms. Tr. 31-32, 39.

An ALJ may, with clear and convincing reasons, discount the claimant's statements if not fully supported by objective evidence. *Carmickle*, 533 F.3d at 1160. These reasons need only be supported by substantial evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Id.*, citing 20 C.F.R. § 404.1529(c)(2).

As to Plaintiff's physical impairments, the ALJ noted that Plaintiff testified she would be unable to work in her position as caregiver for her mother for more than the DSHS authorized amount of 34 hours per month due to pain in her ankle and shoulder. Tr. 30, 58. The ALJ stated that Plaintiff testified she could only put

weight on her right ankle for about 30 minutes before she started limping due to it being "bone on bone." Tr. 30, 58. The ALJ noted that Plaintiff testified her shoulder impairment caused pain when she engaged in side-to-side motion such as when sweeping or vacuuming, and she indicated that attempting to lift heavy objects with her right arm caused her shoulder to feel like it would pop out and caused a pulling sensation around her biceps. Tr. 30, 69. The ALJ also cited Plaintiff's testimony that she was unable to lift her right arm overhead or place it behind her back. Tr. 30, 70. The ALJ referenced Plaintiff's testimony that although she does chores for her mother, she has to sit and rest due to back pain after completing certain chores. Tr. 30, 59. Plaintiff testified that she experienced both good days and bad days in terms of her pain, and on bad days she was unable to do household chores. Tr. 30, 75-76.

However, as determined by the ALJ, there was a great deal of objective evidence to support a finding that Plaintiff was less limited in terms of physical functioning than she alleged at the time of the hearing. Tr. 31-32; *see* Tr. 668 (August 2014: electromyographic testing was mostly unremarkable); Tr. 655 (November 2014: physical examination showed grossly normal motor and sensory function); Tr. 750 (May 2015: at the same examination in which she was noted to have deficits in terms of her right ankle function, it was otherwise noted that she had good dorsiflexion, plantarflexion, inversion, eversion, abduction, and adduction in both feet and that her longitudinal arch was well preserved with no lateral peritalar subluxation); Tr. 750 (May 2015: Plaintiff was noted to limp at that time, but it was also noted that her back gymnastics were "excellent" and she was able to toe and heel walk); Tr. 460 (Although she had moderately antalgic gait in which she favored her right leg and had difficulty with toe and heel walking because of decreased range of motion of the right ankle, she otherwise had stable station with negative Romberg testing and was also able to tandem walk); Tr. 761 (Although hopping produced right ankle discomfort, Plaintiff could perform a full

squat despite complaints of lumber pain); Tr. 462 (Plaintiff was noted to have 5/5 strength bilaterally and symmetrically in all major muscle groups of the upper and lower extremities, 5/5 grip strength bilaterally, normal muscle bulk and tone, and intact sensation to light touch and pinprick throughout both the upper and lower extremities); Tr. 771 (November 2015: physical examination showed normal range of motion of both the back and upper extremities). Further, in contrast to the few instances in which she was observed to be limping, Tr. 750, 795, on numerus other occasions she was observed to have normal or intact balance, gait, and/or station, Tr. 397, 403, 491, 566, 661, 666, 691, 699, 719, 731, 739, 759, 838.

The ALJ also determined that the objective medical evidence undermined Plaintiff's allegations regarding the severity of her mental symptoms. Tr. 39. The ALJ noted that Plaintiff testified she experienced significant depression which caused her to feel "extremely uncomfortable" around other people. Tr. 31, 60. She testified that she generally kept to herself, did not talk to anyone, did not go anywhere, and did not like using the telephone except to schedule doctor's appointments. Tr. 31, 60. Plaintiff testified that she experienced racing thoughts, was a slow learner, lost interest in activities she used to enjoy, heard several voices in her head, and had difficulty sleeping at night because of voices in her head. Tr. 31, 63, 64, 66, 71.

However, as determined by the ALJ, there were numerous objective findings to show that in spite of the clinical signs of abnormal mental functioning, Plaintiff nevertheless maintained largely intact social and cognitive functioning over the course of the longitudinal period at issue. Tr. 36; *see* Tr. 397, 491 (although in both November 2013 and February 2014 Plaintiff was described as positive for anhedonia, she was otherwise noted to be alert and oriented times three with grossly normal intellect, intact memory, and without agitation, anxiousness, or pressured speech); Tr. 446, 561, 576 (although from March to September 2014 psychiatric evaluations conducted by a nurse practitioner showed that Plaintiff

described her mood as depressed and irritable, she otherwise had largely normal functioning as she presented as pleasant and cooperative, with good eye contact, as alert and oriented to all spheres, with speech or normal rate and rhythm, and with no language deficits noted); Tr. 666 (July 2014: Plaintiff was described as alert and oriented with grossly normal intellect and intact memory, as well as no unusual anxiety or evidence of depression); Tr. 661 (October 2014: Plaintiff was described as alert and oriented and as having normal affect and level of consciousness, grossly normal intellect, intact memory, and no agitation, anxiousness, or pressured speech); Tr. 655 (November 2014: Plaintiff was described as alert and oriented with no unusual anxiety or evidence of depression); Tr. 691, 699, 709, 714, 719, 739, 821, 847 (from February 2015 to April 2016: examinations consistently showed that Plaintiff was alert, oriented, pleasant, and cooperative and that she had appropriate mood, appropriate or normal affect, normal rate and rhythm of speech, and good eye contact); Tr. 364 (although it was noted that concept formation was reasonably poor, Plaintiff had relatively good judgment and insight and reasonably good memory in that she was able to reliably recall five digits forwards and four digits backward); Tr. 453 (although she scored in the extremely low range on the immediate working memory testing, she otherwise scored in the borderline range for auditory, visual, and delayed memory and in the low average range on visual working memory); Tr. 366 (although it was noted that she performed "much better" on memory testing after a brief delay on virtually all tests administered, it was also noted that this indicated her memory was active in a normal way and that the delay allowed for consolidation of the information, thus resulting in a better delayed memory performance); Tr. 366 (a finding that the results of this testing were indicative of significantly impaired cognitive functioning was inconsistent with the fact that the consultative examining psychologist also noted in his report that functionally, Plaintiff was able to remember test instructions and test questions and items, performed at a reasonably

good pace, and was persistent up to the point of her ceiling); Tr. 367 (a finding of significantly impaired social functioning was inconsistent with fact that it was further noted that although Plaintiff would get agitated when she approached ceiling items and began failing test items, she was otherwise able to develop and maintain "at least a superficial relationship with the examiners"). Further, Plaintiff was noted to be cooperative, apologetic about failing test items, fully oriented, and to have a relatively good fund of information. Tr. 37.

Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). Based on this record, the ALJ reasonably concluded that the record reflected inconsistencies between Plaintiff's alleged physical and mental limitations and the objective medical evidence. The ALJ's finding is supported by substantial evidence, and this was a proper basis for the ALJ to discredit Plaintiff's symptom testimony. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Rollins*, 261 F.3d at 857.

### 2. Inconsistent Statements

Second, the ALJ determined that Plaintiff made statements that were inconsistent with her alleged limitations. Tr. 32.

In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances. *Smolen*, 80 F.3d at 1284 (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ determined that the record contained evidence of inconsistent statements and behaviors with regard to Plaintiff's mental functioning that

indicated she was not as limited as she alleged at the hearing. Tr. 38. In contrast to her alleged significant difficulties in being around other people, Plaintiff reported at a consultative physical examination in April 2014 that she was looking forward to warmer weather so she could sit outside and visit with neighbors. Tr. 459. She also reported that she had two friends in her life, that she was able to interact with store clerks, and that she occasionally attended church. Tr. 364. In September 2014, she reported to her mental health counselor that she had plans to meet friends of a friend in order to expand her social network. Tr. 547. She reported in June 2015 that she was in a relationship with a partner that was "doing pretty good." Tr. 722. In contrast to Plaintiff's testimony that she had become extremely isolated since approximately three months prior to the hearing, she reported in mid-April 216 that she and her girlfriend had been getting along well and the day before they had celebrated her birthday with a barbeque at the park. Tr. 690.

In contrast to her testimony that she experienced racing thoughts, was a slow learner, and lost interest in activities she used to enjoy, Plaintiff was able to work as a caregiver to her mother for the maximum number of hours authorized by DSHS. Tr. 31, 63, 64, 66, 71. The record showed additional evidence of largely intact cognitive functioning in that the Cooperative Disability Investigations Unit (CDIU) report noted Plaintiff played video games on her phone and computer, she was observed to have good recall, and her activities included driving frequently, grocery shopping without help, and taking her mother to yard sales. Tr. 591. Further, in September 2015, Plaintiff reported that she was spending time applying for jobs, indicating that during the alleged period of disability she did not always consider herself to have such limited social and cognitive functioning that she was unable to engage in any type of work activity. Tr. 707.

On this record, the ALJ reasonably concluded that Plaintiff made inconsistent statements about her level of mental functioning. Plaintiff's

allegations of social and cognitive limitations are thus inconsistent with, and not fully supported by, the evidence of record.

The ALJ also determined that despite Plaintiff's reports of sleep apnea and problems sleeping, she inconsistently reported on more than one occasion that she was sleeping well. Tr. 32-33 (citing Tr. 549, 575). Plaintiff argues that the ALJ merely "cherry-picked" two isolated reports of sleeping well, as there were several reports of irregular sleep in the record and objective signs of fatigue. ECF No. 14 at 19 (citing Tr. 443, 544, 549, 586, 642, 706, 708, 718, 731, 744, 801, 887). Defendant appears to concede that the ALJ's finding of inconsistent evidence regarding Plaintiff's sleep issues is not supported by substantial evidence. ECF No. 17 at 10. The Court agrees that the ALJ erred by selecting these two isolated instances from the overall record to support the finding that Plaintiff's statements were inconsistent with her alleged limitations regarding sleep. Nevertheless, this error is harmless, as the ALJ provided additional reasons, supported by substantial evidence, for determining that Plaintiff made statements that were inconsistent with her alleged level of mental impairment. *See Carmickle*, 533 F.3d at 1162-63; *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

### 3. Inconsistent Activities of Daily Living

Third, the ALJ found that Plaintiff reported significant levels of physical activity which showed greater functional abilities than she alleged. Tr. 32-33.

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was proper for the ALJ to find that Plaintiff's reports of activities (going grocery shopping with her mother in order to carry the bags, doing laundry, washing dishes, vacuuming, sweeping, mopping, cleaning the bathroom, fishing, pulling weeds in her yard, driving frequently, and riding a bicycle for as long as two to three hours at a time, Tr. 565, 591, 663, 707-08), were inconsistent with the limitations Plaintiff alleged, and detracted from her overall credibility. *See Molina*, 674 F.3d at 1113 ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *see also Morgan*, 169 F.3d at 599-600, 603 (affirming the ALJ's adverse determination regarding symptom testimony and noting that evidence of the claimant's daily activities, such as the ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child, served as evidence of his ability to work); *Rollins*, 261 F.3d at 857 (affirming the ALJ's adverse determination regarding symptom testimony and noting that the claimant's allegation of disability was undermined by testimony about her daily activities, such as attending to the needs of her two young children, cooking, and shopping).

The ALJ reasonably concluded, based on this record, that Plaintiff's reports of daily activities did not support the level of impairment alleged by Plaintiff. Tr. 32-33. The ALJ's finding is supported by substantial evidence.

### 4. Treatment Effective in Controlling Symptoms

Finally, the ALJ determined that the record reflected Plaintiff responded well to physical therapy for her right shoulder pain. Tr. 33 (citing Tr. 501-42). The ALJ also found that the record showed Plaintiff's depression would probably be under reasonably good control if she were consistent and compliant with psychiatric treatment, and that she frequently reported improvement of her mental health symptoms through the use of medications. Tr. 37-38. The ALJ also

determined that Plaintiff's ankle pain was not as functionally limiting as she alleged because she failed to address the issue of obtaining a properly fitting ankle brace, as recommended by a treating provider.  Tr. 33, 751.

The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2017); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  Further, an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Plaintiff argues that the improvement in her shoulder with physical therapy does not undermine her claim of disability because she reported specific resolution to pain radiating into her cervical region and head, but with continued pain with abduction and external rotation of her shoulder, and records from other providers support the resolution of symptoms in her neck but not her shoulder.  ECF No. 14 at 19 (citing Tr. 501, 612).  Plaintiff also contends that any relative improvement to her shoulder was not significant, as these records show that she continued to have "very disabling pain" and limited functionality.  ECF No. 14 at 19 (citing Tr. 506-07, 512-13).

The ALJ found that the record showed Plaintiff attended physical therapy for treatment of her right shoulder pain from May to July 2014.  Tr. 33 (citing 501-42).

The ALJ indicated that treatment notes reported Plaintiff responded well to this treatment such that by July 2014, she reported her pain levels were improving and she had noticed an increased range of motion of the affected shoulder. Tr. 33; *see* Tr. 502 (Plaintiff indicated she was noticing increased active range of motion of the affected shoulder, though pain was still present); Tr. 504 (Plaintiff reported pain levels were improving); Tr. 505 ("[Plaintiff] responded well to treatment"). The record also revealed that during this timeframe, Plaintiff consistently reported she was spending time fishing, and reported she was doing yard work and pulling weeds. Tr. 33 (citing Tr. 565, 573; 663).

Plaintiff testified that mental health counseling had not been helpful for her symptoms. Tr. 37-38, 71-72. However, the ALJ determined that evidence in the record showed Plaintiff's mental symptoms improved with counseling and medication. Tr. 37-38. Plaintiff argues it was error for the ALJ to make such a determination, as her treating mental health counselor's statement that Plaintiff was "not yet" stable was made after two years of ongoing treatment, and "clearly indicates that any improvements were not permanent." ECF No. 14 at 20 (citing Tr. 37-38, 870). However, the ALJ noted the consultative examiner reported that at the time of his evaluation in April 2012, Plaintiff had been inconsistent in seeking and following through with therapies for her psychiatric problems, but her depression was treatable and would probably be under reasonably good control if she was consistent and compliant with psychiatric treatment. Tr. 37 (citing Tr. 366). The ALJ also referenced progress notes from August 2014 to January 2016, where treating mental health counselor Maria Mondragon, MSW, indicated that although Plaintiff was not yet stable in terms of medications for her mental impairments, she had made overall good progress in treatment. Tr. 37 (citing 870, 872, 874-85). The ALJ also found that the record showed Plaintiff had frequently reported improvement of her mental symptoms through use of various medications. Tr. 38; *see* Tr. 657, 747 (October and December 2014: Plaintiff reported that her

mood was stable on Lamotrigine and that she was doing well on current medications such that she wanted to hold off on attending mental health counseling); Tr. 740 (February 2015: Plaintiff reported that, overall, she liked the way she felt on Latuda); Tr. 565, 575 (Plaintiff reported improvement in terms of her racing thoughts with use of Adderall and noted that this medication allowed her to be able to concentrate more easily); Tr. 690 (April 2016: Plaintiff reported that increased use of Fluvoxamine was "very effective" such that she had not been experiencing intrusive and repetitive reruns of conversations, as she had previously experienced).

On this record, the ALJ reasonably concluded that Plaintiff's impairments when treated were not as limiting as Plaintiff claimed.

Further, although Plaintiff testified that putting weight on her ankle for more than 30 minutes felt like "bone on bone," she also testified that the ankle brace recommended by her treating orthopedic surgeon in May 2015 had not helped with her ankle pain because it did not fit her properly.  Tr. 33, 58, 68, 680, 751. Plaintiff testified that she would be making another appointment with her treating orthopedic surgeon in order to address this issue.  Tr. 33, 68.  The ALJ determined that because Plaintiff had not yet addressed this issue when the brace was recommended more than one year prior to the hearing strongly suggested that Plaintiff's ankle pain was not as functionally limiting as she alleged.  Tr. 33.  The ALJ reasonably concluded, based on this record, that Plaintiff's failure to follow a prescribed course of treatment to alleviate her ankle pain did not support the level of impairment alleged by Plaintiff.  Tr. 33.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 399-400.  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and

may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

## C. Medical Source Opinions

Plaintiff argues the ALJ failed to properly consider and weigh the opinion evidence. ECF No. 14 at 8-15. Specifically, Plaintiff asserts that the ALJ erred in determining her physical RFC by giving some weight to the opinions of consultative examiner Dr. Drenguis and reviewing consultant Dr. Staley, while assigning little weight to the opinions of treating providers including Dr. Orvald, Dr. Crank, Mr. Simmons, and Ms. Schwarzkopf. ECF No. 14 at 8 (citing Tr. 33-36). Plaintiff contends that the ALJ erred in determining her mental RFC by giving great weight to reviewing consultants Dr. Kraft and Dr. Robinson, while assigning little weight to treating therapist Ms. Mondragon and examiners Dr. Toews and Dr. Cline. ECF No. 14 at 8 (citing Tr. 39-42).

In weighing medical source opinions in a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: (i) treating physicians, who actually treat the claimant; (ii) examining physicians, who examine but do not treat the claimant; and (iii) non-examining physicians, who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. An opinion of a treating physician is given more weight than the opinion of a non-treating physician. *Orn*, 495 F.3d at 631. An examining physician's opinion is given more weight than that of a non-examining physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."

*Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, he must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 404.1513(d) (2013).[3] However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232. Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill*, 12 F.3d at 918.

The ALJ is required to set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be

_____

[3] Prior to March 27, 2017, the definition of a medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, were located at 20 C.F.R. § 404.1513(d).

extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

In April 2014, examining physician William R. Drenguis, M.D., conducted a consultative physical examination of Plaintiff. Tr. 458-63. Dr. Drenguis opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, her maximum standing/walking capacity in an eight-hour workday with normal breaks was about four hours, and her maximum sitting capacity in an eight-hour workday was about six hours. Tr. 462. Dr. Drenguis determined that Plaintiff had no environmental limitations. Tr. 463. He stated that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, she had no limitations on reaching with her left side, and no limitations on handling, fingering, or feeling with either hand.[4] Tr. 463. Dr. Drenguis opined that Plaintiff could occasionally reach with her right side (versus occasionally reach overhead and frequently reach in all other directions, as found by the ALJ).[5] Tr. 463. The vocational expert testified that no jobs would be available to Plaintiff at the light or sedentary exertional level if she were limited to occasional (versus frequent) reaching in all directions. Tr. 85-86.

In December 2014, state agency medical consultant, Normal Staley, M.D., reviewed the medical evidence of record at the reconsideration level and opined that Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of two hours in an eight-hour workday, sit

---

[4] Plaintiff testified that she is left handed. Tr. 69, 72. Dr. Drenguis erroneously noted that Plaintiff was right hand dominant. Tr. 463.

[5] Dr. Drenguis's report did not offer a definition of "occasional." However, as defined by the Social Security Rulings, "occasional" means "from very little to up to one-third of the time," where "frequent" means occurring "from one-third to two-thirds of the time." SSR 83–10, 1983 WL 31251, at *5, 6.

for a total of about six hours in an eight-hour workday, and she was limited in terms of pushing and/or pulling with her right upper extremity. Tr. 117, 136. Dr. Staley also stated that although Plaintiff could frequently balance, she could only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, and could never climb ladders/ropes/scaffolds. Tr. 117-18, 136-37. He opined that Plaintiff should avoid concentrated exposure to vibration and even moderate exposure to hazards such as machinery and heights. Tr. 119, 138. Like Dr. Drenguis, Dr. Staley also opined that Plaintiff was limited to occasional reaching on the right side, both in front and/or laterally, as well as overhead (versus occasional reaching overhead and frequent reaching in all other directions, as found by the ALJ). Tr. 118, 137.

The ALJ gave some weight to the opinions of Dr. Drenguis and Dr. Staley, discounting the assessed limitation that Plaintiff could only occasionally reach in all directions on her right side. Tr. 34-35. Plaintiff's sole challenge to the ALJ's rejection of Dr. Drenguis and Dr. Staley's opinions is to this specific limitation. ECF No. 14 at 9-12. Because Dr. Drenguis was an examining physician and his opinion that Plaintiff was limited to occasional reaching in all directions on the right side was not contradicted by any medical or other sources in the record, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for rejecting this aspect of his opinion. *Bayliss*, 427 F.3d at 1216 (If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence").

The ALJ assigned little weight to Dr. Drenguis and Dr. Staley's determinations that Plaintiff could only occasionally reach with her right side, finding that Plaintiff's activities and statements made during the course of treatment did not support the "occasional" reaching limitation opined by both doctors. Tr. 34. The ALJ referenced Plaintiff's reports that she had been able to frequently drive, ride her bicycle for up to two to three hours at a time, go grocery

shopping and carry groceries, and go fishing, noting that all of these activities require the ability to reach and use both arms.  Tr. 34.  Plaintiff also reported that over the longitudinal period she engaged in activities such as working in her yard pulling weeds, acting as a caregiver to her mother by washing dishes, vacuuming, sweeping, mopping, and cleaning the bathroom, and doing her own household chores.  Tr. 58, 62-63, 79.

Plaintiff argues that the ALJ failed to give sufficient reasons for rejecting this aspect of the doctors' opinions, and thus improperly formulated the RFC by elevating Plaintiff's ability on her right side to "frequent" reaching in all directions, except overhead.  ECF No. 14 at 9-12.  Plaintiff argues the record does not support the ALJ's determination that she could frequently reach in all directions other than overhead, as she explained that some days are better than others as far as her ability to function.  ECF No. 14 at 9 (citing Tr. 57-58, 75-76).  She also argues it was error for the ALJ to find inconsistencies between the doctors' opinions and the evidence that Plaintiff's activities "require the ability to reach and use both arms," as neither doctor suggested she had no ability to use her right arm, but instead determined that she could functionally reach "occasionally."  ECF No. 14 at 10 (citing Tr. 34, 117-18, 463.)  Finally, Plaintiff argues that her activities do not pose any contradiction to the opinion of "occasional" right arm reaching because there is no indication that they required her to exceed "occasional" use of her right arm. ECF No. 14 at 10 (citing Tr. 33-35).  Defendant argues that the ALJ provided sufficient reasons to discount these opinions about Plaintiff's ability to reach occasionally, as Plaintiff's activities required the use of her arms and she reported that she regularly lifted while at the grocery store and was "very active" during the summer with fishing and yardwork.  ECF No. 17 at 11-12.

The Court agrees with Plaintiff that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting Dr. Drenguis's uncontradicted opinion that Plaintiff was able to reach occasionally with her right

side when formulating the RFC.  Plaintiff does not suggest that she is unable to use her arms, and thus, Defendant's argument that Plaintiff's activities were inconsistent with occasional reaching because they required the use of her arms is not persuasive.  When evaluating Plaintiff's credibility, the ALJ found that Plaintiff reported significant levels of physical activity which showed greater functional abilities than she alleged and detracted from her overall credibility.  Tr. 32-33.  However, the same activities do not constitute a clear and convincing reason to reject Dr. Drenguis's opinion that Plaintiff was limited to "occasional" reaching in all directions.  For example, Plaintiff's testimony that she grocery shops with her mother in order to carry the bags and load them into the car contradicts her testimony that she is unable to lift anything heavy due to her shoulder pain.  Tr. 63, 69.  However, this does not necessarily support an ability to frequently, as opposed to occasionally, reach in all directions with her right side as the record is silent as to how often Plaintiff goes grocery shopping or the length of her shopping trips.  Similarly, Plaintiff's testimony that she does laundry, washes dishes, vacuums, sweeps, mops, and cleans the bathroom contradicts her testimony that her shoulder impairment causes pain when she engages in side-to-side motion such as when sweeping or vacuuming.  Tr. 69.  However, these activities do not necessarily support an ability to frequently, as opposed to occasionally, reach in all directions with her right side, as Plaintiff also testified that she experienced both good days and bad days in terms of her pain, and on bad days she was unable to do household chores.  Tr. 30, 75-76.  While Plaintiff's reports of fishing and riding a bicycle for as long as two to three hours at a time contradict her testimony regarding the severity of her shoulder pain, Tr. 565, 591, 663, 707-08, the record does not necessarily support an ability to frequently, as opposed to occasionally, reach in all directions with her right side with regard to these activities, as she testified that she would go fishing up to three times a month, Tr. 78, and she reported that she rode her bicycle up to two or three hours at a time, Tr. 708.  The

record does include a report that Plaintiff frequently drove a car, which is contradicted by her testimony that she does not drive, but a reliance solely on a report of driving frequently does not constitute the clear and convincing evidence needed to reject an examining physician's uncontradicted opinion. Tr. 63, 591.

The ALJ's rationale for formulating Plaintiff's RFC to include frequent right side reaching in all directions (except overhead) is unsupported in this case. The ALJ's error is not harmless. The vocational expert testified that no jobs would be available to Plaintiff at the light or sedentary exertional level if she were limited to occasional (versus frequent) reaching in all directions. Tr. 85-86. Thus, the ALJ's error was not "inconsequential to the ultimate nondisability determination." *See Stout*, 454 F.3d at 1055. Therefore, the Court finds that the ALJ committed reversible error when failing to provide the required clear and convincing reasons for rejecting this aspect of Dr. Drenguis's opinion.

The ALJ also determined that the opinions of Drs. Orvald, Crank, Toews, and Cline, and Mr. Simmons, Ms. Schwarzkopf, and Ms. Mondragon are not supported by substantial evidence in the record. Tr. 34-38, 40-42. However, since this matter must be remanded for additional proceedings to remedy the above noted defect, the ALJ shall also be instructed to review the reports of these medical and other sources and accord them appropriate weight to the extent they are found to address Plaintiff's impairments.

Plaintiff's RFC is an administrative finding, dispositive of the case, which is reserved to the Commissioner, and, by delegation of authority, to the ALJ. SSR 96-5p. It is thus the responsibility of the ALJ, not this Court, to make an RFC determination. Accordingly, Plaintiff's RFC must be redetermined, on remand, taking into consideration the opinions of the medical professionals noted above, as well as any additional or supplemental evidence relevant to Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income benefits.

**CONCLUSION**

Plaintiff argues that the ALJ's decision should be reversed and remanded for the payment of benefits. ECF No. 14 at. 21. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). Administrative proceedings may be useful where there is a need to resolve conflicts or ambiguities. *Andrews*, 53 F.3d at 1039. Plaintiff testified that she was unable to lift her right arm overhead or place it behind her back. Tr. 70. Her only testimony as to her ability to reach in other directions involved moving her arms from side-to-side and her testimony was contradicted by her activities. She also testified and reported that she engaged in many activities that may or may not have required frequent reaching with her right side. In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence in this case and must be reevaluated. On remand, the ALJ shall further develop the record as to Plaintiff's activities, specifically focusing on Plaintiff's ability to reach in all directions with her right side, and reassess the opinions of Drs. Orvald, Crank, Kraft, Robinson, Toews, and Cline, Mr. Simmons, Ms. Schwarzkopf, and Ms. Mondragon, and all other medical evidence of record relevant to Plaintiff's claims for benefits. The ALJ shall formulate a new RFC determination, obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's claims.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED IN PART**.

1   2.   Defendant's Motion for Summary Judgment, **ECF No. 17**, is

2   **DENIED**.

3   3.   The matter is **REMANDED** to the Commissioner for additional

4   proceedings consistent with this Order.

5   4.   An application for attorney fees may be filed by separate motion.

6   The District Court Executive is directed to file this Order and provide a copy

7   to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and

8   the file shall be **CLOSED**.

9   **IT IS SO ORDERED.**

10   DATED May 1, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE